UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUZ E. SKELCHER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. |
| | : | |
| THE STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF CORRECTION, | : | |
| Defendant. | : | JANUARY 6, 2021 |

## C O M P L A I N T

### COUNT ONE

1. This is an action for money damages to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States and the State of Connecticut. The defendant participated in discrimination against, disparate treatment, harassment of and retaliation against the plaintiff, an Hispanic female.

2. Said conduct was and is based upon the plaintiff's gender, ethnicity or in retaliation for her complaints about such unlawful conduct. The conduct of the defendant was persistent and ongoing to the present, thus constituting a continuous course of conduct.

3. The defendant has disparately treated the plaintiff, failed to promote her, unfairly punished and harassed her, has created a hostile work environment, has retaliated against her for her protected complaints and has denied her employment opportunities within the defendant, which opportunities have been afforded, and which harassment and punishment has not been imposed upon similarly situated employees not of the plaintiff's gender, ethnicity or who have not complained about such

discriminatory treatment.

4. The conduct of the defendant is reckless or intentional and carried out with malice, ill will, or improper motive, on the basis of her gender and/or ethnicity, and/or in retaliation for her for complaints about discriminatory treatment.

5. By and through their conduct as stated herein, the defendant has subjected the plaintiff to, inter alia, violation of the rights secured to the plaintiff by the provisions of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

The defendant further subjected the plaintiff to discrimination, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.; to negligent supervision and to the intentional infliction of emotional distress, in contravention of the laws of the State of Connecticut, invoked pursuant to the Court's supplemental jurisdiction.

6. Jurisdiction of this Court is invoked under the provisions of Title 28 United States Code §§1331, 1343(3) and 1367(a), and Title 42 United States Code §2000e-5(f).

7. During all times mentioned in this Complaint, the plaintiff, Luz E. Skelcher, was and is an adult citizen of the United States, residing in Coventry, Connecticut.

8. The plaintiff is an Hispanic female.

9. The State of Connecticut, Department of Correction (hereinafter, "DOC") is the defendant.

10. At all times relevant to the instant complaint, the defendant was and is an

employer with more than 100 employees.

11. The plaintiff was hired by the defendant on or about August 20, 2004 as a Correction Officer. The plaintiff now has over sixteen (16) years experience with the defendant.

12. For the entirety of her career with the defendant DOC, until February, 2020, the plaintiff has been posted to Corrigan-Radgowski Correctional Center, located in Uncasville. The plaintiff was one of only two female Hispanic Correction Officers at that facility, the second having only recently been hired less than one year prior to the commencement of the instant action.

13. For the entirety of her employment with the defendant, the plaintiff has been an excellent, productive, and dedicated employee. The plaintiff has consistently learned and excelled at a variety of posts and skills within the defendant. From the very beginning of her employment, her goal was to learn as much possible so that she would be an excellent promotional candidate.

14. The plaintiff has consistently been a hard working, high achieving and excellent employee. Throughout her tenure with the defendant, the plaintiff has been given and excelled at the most difficult and challenging assignments. The plaintiff has received excellent work performance evaluations, and has been lauded for her work performance, her volunteer positions related to her work, and her achievements.

15. The plaintiff is bilingual, able to translate between Spanish and English, and has been called upon to do so many occasions in her employment.

16. For a substantial time from the beginning of her employment and continuing to the present, the plaintiff has been subjected to disparate and lesser treatment and

has been passed over for promotion, due to her race and gender, or for having made protected complaints.

17. Since being in the Department Of Correction the plaintiff has been treated unfairly by her superiors.  For example, on February 3, 2011, there was a bad snow storm.  The plaintiff received a phone call from a fellow Correction Officer who asked if the plaintiff would pick her up because she could not drive in the snow.  The plaintiff picked up the C/O at her home and arrived at work while Roll Call was in progress.  After taking her post, Lt. Palmer called the plaintiff to the Lieutenant's office and presented her with a two minute late slip.  The plaintiff explained that she had picked up her fellow C/O on her way in.  The Lieutenant nevertheless proceeded to present the plaintiff with a late slip.

18. Many times other C/Os who are not Hispanic females have been late by ten, twenty, even thirty minutes, and were not given late slips.

19. Lt. Palmer is a supervisory agent of the defendant DOC.  Palmer is a white, non Hispanic male.

20. On September 25, 2012, the plaintiff was posted in A Pod with Officer Field.  The plaintiff's then boyfriend worked in the position of A/C Rover at the facility.  During down time he would come to plaintiff's unit, which is common practice among Rovers.

21. Lt. Colvin, a supervisory agent of the defendant DOC, prohibited the plaintiff's boyfriend from doing so.  The plaintiff asked Lt. Colvin why he forbade her boyfriend from coming to the unit, when others Rovers were allowed to do so.  The plaintiff pointed out that many couples are allowed to work together at the facility and are not separated.  Colvin stated, "That's different".

22. Lt. Colvin, is a white, non Hispanic male.

23. In 2012, Lt. Palmer again treated the plaintiff differently and less fairly than a similarly situated white, non Hispanic male colleague. The plaintiff was posted as F/H Rover (West Side responder) while in F-Pod. C/O McKenna (East Side responder) was present. Lt. Palmer gave the plaintiff a direct order to help East Side feed. The plaintiff stated that she was a West Side responder. Officer McKenna informed Lt. Palmer that he would do it because he's the East Side responder. Lt. Palmer insisted that the plaintiff go to the East Side. The plaintiff asked Lt. Palmer why he was making her do work not pertaining to her post, particularly when the proper C/O for that post, McKenna, was present. Palmer could give the plaintiff no valid reason, and simply stated that he did not want to "argue" with her, and said, "just do what I tell you to do".

24. On March 6, 2015, her five day post for this rotation was Hall 2 (AP). The plaintiff was pulled out of her 5 day post and was posted in B Pod (gang block) so that a C/O from another shift could receive overtime that otherwise would have gone to the plaintiff. The C/O is a white, non Hispanic male and has less seniority than the plaintiff.

25. When there is a death in the family of an employee, the defendant acknowledges the loss and extends support to the affected employee. When Hurricane Maria hit Puerto Rico in October, 2017, the plaintiff's brother went missing. Through her efforts and contact with hospitals in Puerto Rico and Sciencia Ferensis, the plaintiff learned that her brother's body was found. The plaintiff informed her Supervisor that she had to fly to Puerto Rico to identify her brother's body. When the plaintiff returned from identifying his body and organizing his cremation, the plaintiff did not receive any recognition from the defendant, and it made no mention of or offered any support to her

regarding this tragic time.

26. A posting in the Lobby brings a C/O into direct contact with the public. On an occasion where the plaintiff was posted in the Lobby, Captain Penn had her relieved by Officer Diane Finney, and the plaintiff was put in A block. The plaintiff asked Captain Penn why she was pulled off of her post. Penn stated that the plaintiff should not have asked a visitor to take off their shoes before walking through the metal detector.

27. Captain Penn claimed that she thought that the plaintiff's "strengths were in A block", to wit, away from contact with the public. The plaintiff informed Captain Penn that the plaintiff was directed by a supervisor to require that the visitor walk through the metal detector in order to enter the facility. Captain Penn refused to listen to the plaintiff.

28. The plaintiff was informed by Lt. Butler that Captain Penn gave all Lieutenants orders to never post the plaintiff in the Lobby again.

29. Captain Penn is a supervisory agent of the defendant DOC, and is a black non Hispanic female. C/O Finney is a white, non Hispanic female.

30. After unfairly being pulled out of her posts and posted in the Dorms, the plaintiff contacted her union steward to complain about how her Supervisors were treating her unfairly and discriminatorily.

31. In 2018, The plaintiff became aware of an upcoming opening in the Phone Room post on first shift. Her bilingual skills would be beneficial to the defendant DOC in that position. The plaintiff indicated her interest, and Deputy Warden Carlos agreed, stating that she wanted me to be part of her team at Radgowski. Deputy Warden Carlos is a black female.

32. It is common practice at the defendant DOC for Supervisors to offer posts to qualified officers without the C/O's making formal application for the position. The appointment is made and announced at roll call. The plaintiff was told the post was to be hers. Thereafter, Captain Shabenas and Captain Korch learned that the plaintiff was getting the post. Captain Shabenas and Captain Korch were angry that the post was to go to her, and prevented it from happening.

33. Captain Shabenas and Captain Korch are Supervisory agents of the defendant DOC. Captain Shabenas and Captain Korch are white non Hispanic males.

34. On November 5, 2018, the defendant DOC announced that promotions would be made statewide. For the first time, the defendant eliminated any testing whatsoever from the promotional process. Instead, the defendant rated all online applicants as "Strongly Recommended", "Recommended" or "Acceptable".

35. Thirty-six officers from Corrigan/Radgowski were Strongly Recommended, comprised of thirty-two males and four females. Of the four females, two are white, one is black and one, the plaintiff, is Hispanic.

36. On June 20, 2019, the defendant promoted eight C/O's from the plaintiff's then facility to Lieutenants. Those promoted, their race, gender and seniority are as follows:

1- Daniel Melton, white male, hired 3/31/2006, 13 years employment;

2- Jamilee Dousis, white female, hired 11/10/2006, 12 years employment;

3- Anthony Jusseaume, white male, hired 4/25/2008, 11 years employment;

4- Michael Greene, white male, hired 9/12/2008, 11 years employment;

5- Jonathan Peau, samoan male, hired 12/17/2010, 9 years employment;

6- Camelia Daniels, black female, hired 12/13/2013, 6 years employment;

7- Benjy Nichols, black male, hired 12/2/2011, 8 years employment;

8- Kervin Ocasio, hispanic male, hired 3/12/2007, 12 years employment.

37. Two additional C/O's, transfers from other facilities, were promoted. They are one white male and one black male.

38. During the promotional process, everyone else promoted by the defendant had a proper, in person interview in front of Lieutenants, Captains and the Deputy Warden. The plaintiff did not. The plaintiff received a telephone call from Captain Donovan, a white, non Hispanic female and supervisory agent of the defendant DOC. The plaintiff was never asked to come in for a proper, in person interview.

39. The plaintiff was not promoted by the defendant.

40. All of the C/O's who were promoted by the defendant have less time and less experience than the plaintiff. None of the C/O's who were promoted by the defendant are Hispanic females.

41. After the promotion, some lieutenants stopped talking to the plaintiff. The plaintiff asked a Supervisor why were they acting differently towards her. The Supervisor stated that the new Lieutenants felt that the plaintiff was mad at them for having been promoted over her.

42. The plaintiff was and is extremely upset at the unfairness of the defendant DOC and its discrimination in passing her over for promotion, and complained once again. The plaintiff became so upset that she told the defendant DOC "I'm done." The plaintiff broke down. The plaintiff feels that she cannot trust anyone at the workplace.

43. The plaintiff complained to Human Resources and again contacted her

union steward seeking help.  The plaintiff even explored getting a hardship transfer out of the facility which she had worked in for her entire career.  The plaintiff contacted the facility warden, Anthony Corcella.  The plaintiff contacted him twice, leaving messages for him with his secretary.  Corcella did not responded to the plaintiff, and she has never heard from him.

44. The warden, Anthony Corcella, is a Supervisory agent of the defendant DOC.  Corcella is a white, non Hispanic male.

45. The white female who was promoted, Jamilee Dousis, was again promoted to the defendant's Central Office, to be the new District Hearing Officer.  This was done while Dousis was still on probation for the June Lieutenant's promotion. It is unheard of for a new Lieutenant to be on probation and be moved or promoted within a month.

46. Among her other complaints, the plaintiff complained directly to Deputy Warden Cotta about discriminatorily being passed over for promotion.  Rather than assisting her in any way, the Deputy Warden barked at the plaintiff threateningly, demanding to know if she was "Questioning [his] decision?"  The Deputy Warden appeared very angry that the plaintiff complained to him.

47. The plaintiff respectfully stated, "No sir", and inquired of Cotta. "What did I do wrong or where was I lacking that I was passed over for promotion?" Cotta admitted that "You did nothing wrong."  He further admitted that not all qualified candidates get promoted.  Cotta stated, "You do realize not everyone gets promoted."

48. This is particularly so when the candidate for promotion is a highly qualified Hispanic female, who has complained about discrimination against her.

49. Deputy Warden Cotta is a supervisory agent of the defendant DOC.  Cotta is

a white male.

50. On September 12, 2019, the defendant promoted again from the previous list. The defendant promoted another white, non Hispanic male, and the only other female, a white, non Hispanic female. Both have less seniority than the plaintiff.

51. Once again, the defendant DOC passed the plaintiff over for promotion.

52. As the retaliation, hostile work environment and discrimination was ongoing at Corrigan, the plaintiff had no option but to attempt to escape the conduct by transfer.

53. On February 2, 2020, the plaintiff transferred to Brooklyn Correctional. Prior to the promotions the plaintiff was consistently active in the department, in which she received several certifications, been a mentor to and trainer of new staff.

54. Numerous supervisory agents of the defendant DOC admit that the plaintiff should be promoted, knows the building and its posts, has the added skill of being bilingual and would perform the position well. These include Deputy Warden Carlos and several Captains and Lieutenants, who stated to her that she is a huge asset to the defendant DOC.

55. The stress of watching less qualified staff getting promoted and the ongoing harassment was just too much for the plaintiff, so she transferred to Brooklyn on February 2, 2020 for a fresh start.

56. Since then, the plaintiff was subjected to discipline in retaliation for her complaints about the discrimination against her. The defendant DOC imposed a ten (10) day suspension upon the plaintiff, and mandated that she submit to remedial training.

57. The lengthy suspension is substantially harsher than discipline imposed

upon similarly situated persons not of her protected classes, who have not complained about misconduct based thereon.

58. The purpose of the discipline, in addition to retaliation, is to threaten and intimidate the plaintiff to stop complaining, and to create a record to further falsely discipline her, with the intent of terminating the plaintiff.

59. While at the new facility, the plaintiff learned that Deputy Warden Cotta was being promoted to Warden of the Brooklyn Correctional facility where she is currently working.

60. Due to his prior conduct toward her and his statements indicating that she would never be promoted, the plaintiff requested that Cotta please be sent elsewhere.

61. The plaintiff thereafter was informed that both the Commissioner of the defendant DOC and the Human Resources Department of the defendant DOC stated that if she pressed her complaint than the plaintiff would be would be transferred out of Brooklyn.

62. At this point the plaintiff had been forced to work with Cotta. She has tried her best to avoid contact with him out of fear of his conduct against her.

63. In an instance where the plaintiff was on duty when Cotta was touring the facility, the plaintiff was shaking and did not say a word nor did she make eye contact with Cotta. The plaintiff attempts to avoid Cotta at the workplace.  Whenever the plaintiff encounters Cotta, she does not say a word nor make eye contact with him.

64. To date, the plaintiff has not been promoted, and the defendant DOC has done nothing to address her complaints of discrimination and disparate treatment.

65. The defendant DOC has, instead, taken strident steps to intimidate the

plaintiff, keep her supervised by her harassers, retaliate against her, keep her quiet, shut up and stymied against any promotion or fair working conditions, under threat of employment capital punishment.

66.  As detailed herein and continuing to the present, the defendant has subjected the plaintiff to discrimination, harassment, disparate treatment, hostile environment, unfair punishment, retaliation and passed her over for promotion, based upon her race, gender and her complaints.  The conduct is continuous, persistent and ongoing.

67.  The plaintiff was treated differently and more harshly than similarly situated employees of the defendant due to her race, gender or in retaliation for her complaints about the defendants' conduct.

68.  The defendant has not treated other similarly situated employees who are not of the plaintiff's gender or race or who have complained about such conduct in the manner in which plaintiff was treated.

69.  The plaintiff has exhausted her administrative remedies in this matter, and has sought and received a Notice of Right To Sue letter from the United States Department of Justice, Civil Rights Division pursuant to her charge of discrimination filed with the Equal Employment Opportunity Commission, and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities, pursuant to her charge of discrimination filed with the  Connecticut Commission on Human Rights and Opportunities.

70.  The actions of the defendant DOC constitutes, inter alia, race discrimination, gender discrimination, and retaliation in violation of the rights secured to the plaintiff by

the provisions of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

71. As a result of the actions of the defendant, the plaintiff has suffered loss of her rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the her employment, in the eyes of prospective employers and in the public at large; and has suffered severe emotional and mental distress.

**COUNT TWO**

1.-69. Paragraphs 1-69 of Count One are hereby made Paragraphs 1-69 of Count Two.

70. The actions of the defendant constitutes, inter alia, discrimination based upon race, gender and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.

71. As a result of the actions of the defendant, the plaintiff has suffered loss of her constitutional rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the her employment, in the eyes of prospective employers and in the public at large; and has suffered severe emotional and mental distress.

**COUNT THREE**

1.-69.  Paragraphs 1-69 of Count One are hereby made Paragraphs 1-69 of Count Three.

70. The conduct of the defendant constitutes negligent supervision pursuant to the laws of the State of Connecticut.

71.  As a result of the actions of the defendant, the plaintiff has suffered loss of her constitutional rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the her employment, in the eyes of prospective employers and in the public at large; and has suffered severe emotional and mental distress.

**COUNT FOUR**

1.-69.  Paragraphs 1-69 of Count One are hereby made Paragraphs 1-69 of Count Four.

70.  The actions of the defendant as detailed in the foregoing paragraphs were extreme and outrageous.

71.  The actions of the defendant were intentional.

72.  The actions of the defendant were likely to cause emotional distress, and that emotional distress was severe.

73.  The actions of the defendant constitute the intentional infliction of emotional distress.

74.  As a result of the actions of the defendant, the plaintiff has suffered loss of

her constitutional rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the her employment, in the eyes of prospective employers and in the public at large; and has suffered severe emotional and mental distress.

**WHEREFORE**, the plaintiff claims judgment against the defendant as follows:

A.  Compensatory damages, including but not limited to back pay, lost overtime pay, lost vacation pay, lost seniority and other employment-related benefits; and compensation for other economic losses, including but not limited to emotional distress, physical illness and attorney's fees;

B.  Punitive damages;

C.  Costs of this action;

D.  Reasonable attorney's fees;

E.  Such other relief as this Court shall consider to be fair and equitable.

## CLAIM FOR JURY TRIAL

The plaintiff claims trial by jury in this case.

THE PLAINTIFF


BY_____/S/_____
        WILLIAM S. PALMIERI
        Federal Bar No. ct14361
        Law Offices of William S. Palmieri, L.L.C.
        110 Whitney Avenue
        New Haven, CT 06510
        (203) 562-3100
        (203) 909-6006 (fax)
        wpalmieri@hotmail.com
        Her Attorney